UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ARAKS PALYAN, an individual, LEO STEPANYAN, an individual; and LUNA STEPANYAN, an individual,

Petitioners,

v.

RODNEY S. SCOTT, COMMISSIONER FOR U.S. CUSTOMS AND BORDER PROTECTION; et al.,

Respondents.

Case No.: 26cv6109-LL-GC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND DENYING AS MOOT PETITONERS' MOTION FOR TEMPORARY RESTRAINING ORDER**

[ECF Nos. 1, 2]

Before the Court is Petitioners Araks Palyan, Leo Stepanyan, and Luna Stepanyan ("Petitioners") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. Also before the Court is Petitioners' Motion for Temporary Restraining Order. ECF No. 2. On November 3, 2026, Respondents filed their Return to the Petition. ECF No. 4. Petitioners have not filed a Traverse. *See* Docket.[1] For the reasons set forth below, this Court **GRANTS** the Petition and **DENIES AS MOOT** Petitioners' Motion for Temporary Restraining Order.

/ / /

/ / /

[1] The deadline for Petitioner's Traverse is not until November, 10, 2026. *See* ECF No. 3. However, in light of the Court's findings and the facts of this case which involve the custody of minors, ages 5 and 11, the Court issues this Order in an expedited manner.

## I. BACKGROUND

Petitioners—mother Araks Palyan and her two minor children Leo Stepanyan and Luna Stepanyan, ages eleven and five, respectively—fled Armenia in early October 2026. Pet. ¶¶ 16-18, 31. They followed the minors' father, Sarkis Stepanyan, who previously fled Armenia for the United States who currently resides in Los Angeles, California. *Id.* ¶ 34, ECF No. 1-2 at 16. Mr. Stepanyan has a pending asylum application. *Id*. Petitioners entered the United States on October 17, 2026, near the San Ysidro port of entry and were detained by CBP agents shortly thereafter. *Id.* ¶ 31. Petitioner Araks Palyan immediately expressed fear of return to Armenia and stated that she had come "[t]o save our lives, me and my children." *Id*. (citing Ex. 1 at 50, 52, 54). Petitioners have been held at the U.S. Customs and Border Protection ("CBP") at the Imperial Beach Border Patrol Station, since their initial detention. *Id.* at 3. Petitioners Leo and Luna are minors and Petitioners allege that there is a presumption for their release because "CBP facilities, by design, are not suitable for minors for long periods of time" and that extended times in CBP custody beyond 72 hours "likely violate the FSA." *Id.* ¶ 61 (citing *Flores v. Blanche*, No. cv 85-4544-DMG (AGRx), Order re June 1, 2026 Status Conference at 2–3 & n.3 (C.D. Cal. June 15, 2026) (quoting Aug. 15, 2025 order). Petitioners participated in a credible fear interview on October 19, 2026, which resulted in a negative credible fear determination. *Id*. ¶¶ 1-3, 33. Petitioners sought review of the determination by an immigration judge ("IJ"). *Id.* ¶ 4. On October 22, 2026, the IJ vacated the negative credible fear determination as to Armenia but affirmed it as to Costa Rica, the alternative country of removal. *Id*. ¶¶ 4, 37. Petitioners subsequently received expedited orders of removal to Costa Rica and remain in custody pursuant to the removal period. *Id*. ¶ 37.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the

writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. BACKGROUND

Petitioners bring four claims in their Petition: (1) no expedited removal order was lawfully issued in violation of 8 U.S.C. 1225(b)(1) and 8 C.F.R. § 1208.30(b); (2) Respondents do not have statutory authority to remove Petitioners to Costa Rica; (3) Fifth Amendment Due Process Claim; (4) detention in an unlicensed facility in violation of the Fifth Amendment and the Flores Settlement Agreement ("FSA"). Because the Court finds that Petitioners are entitled to relief on the FSA claim, it does not address the merits of the remaining claims.

### A. This Court has Jurisdiction over Petitioners' FSA Claim.

Respondents allege that this Court lacks jurisdiction over Petitioners' claims for three reasons: (1) *Aleman Gonzalez* clarified that 8 U.S.C. § 1252(f)(1) divests district courts of jurisdiction to enforce the FSA; (2) other jurisdiction-stripping provisions of 8 U.S.C. § 1252 prevent Petitioners from challenging decisions relating to their removal order; and (3) Petitioners' claims are improper habeas claims because they do not entitle Petitioners to release. The Court finds that each of Respondents' arguments is without merit as applied to Petitioners' claim alleging unlawful detention in violation of the FSA.

Respondents claim that the Court in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), effectively divested district courts of jurisdiction over enforcement of the FSA. Return at 9. The Court in *Aleman Gonzalez* held that 8 U.S.C. § 1252(f)(1) prohibits district courts from granting class-wide injunctive relief that affects certain provisions of the INA, and Respondents contend that the FSA itself was an unlawful exercise of jurisdiction. *Id.* at 10. As a result, Respondents argue that *no court* has jurisdiction to enforce the FSA. *Id.* at 9-10.

Respondents' argument is without merit. First, Respondents offer no authority that has held the FSA generally unenforceable under their interpretation of *Aleman Gonzalez* or any other authority. *See generally id.* at 7-10. Respondents cite *Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022), where the Ninth Circuit found that Section 242(f)(1) "applies to certain injunctions that enforce or restrain certain provisions of the INA." *Galvez*, 52 F.4th at 830. However, *Jaddou* does not discuss the FSA (the relevant injunction) nor 8 U.S.C. § 1225(b) (the relevant provision). Moreover, Respondents implicitly acknowledged that the FSA remains effective when they pointed out the pending appeal of the *Flores* court's *denial* of the government's motion to terminate the FSA. Return at 9. In contrast, the Ninth Circuit has repeatedly enforced the FSA in the decades since 8 U.S.C. § 1252(f)(1) was enacted. *See, e.g.*, *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016); *Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020); *Flores v. Barr*, 977 F.3d 742 (9th Cir. 2020).

Second, *Aleman Gonzalez* and Section 1252(f)(1) only prohibit *class-wide* injunctive relief, not the individual relief Petitioners presently seek. Section 1252(f)(1) states that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation" of certain provisions of the INA, "other than with respect to the application of such provisions to an individual alien." 8 U.S.C. § 1252(f)(1). The *Aleman Gonzalez* Court clarified that the provision "prohibits federal courts from granting classwide injunctive relief" but "does not extend to individual cases." 596 U.S. at 549. Here, the individual-alien exception applies: Petitioners seek relief for themselves as individuals, not for the entire *Flores* class. The Court finds that because Petitioners seek individualized relief and because the FSA remains enforceable despite *Aleman Gonzalez*, Section 1252(f)(1) does not divest this Court of jurisdiction.

Respondents cite three other provisions of Section 1252 that allegedly strip this court of jurisdiction over Petitioner's claim: Section 1252(g), Section 1252(a)(2)(A), and Section 1252(e). Return at 2-7. The Court finds that none of the above provisions apply to

Petitioners' FSA claim, which challenges Petitioners' present custody and not their order of removal. *See generally* Pet. ¶¶ 10, 13.

Each of the provisions of Section 1252 that Respondents cite prohibit courts from hearing claims that relate to a petitioner's order of removal. Section 1252(g) prevents the review of claims "arising from" the government's decision "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Section 1252(a)(2)(A) bars review of expedited removal orders generally. *See id.* § 1252(a)(2)(A). Sections 1252(e)(2) and (3) provide limited pathways for review of expedited removal orders, including "challenges to the validity of the system" (limited to the District of Columbia) and "narrow habeas corpus proceedings." *See id.* §§ 1252(e)(2)–(3). The latter only allows a court to determine three questions: (1) "whether the petitioner is an alien"; (2) "whether the petitioner was ordered removed under [§ 1225(b)(1)]"; and (3) whether petitioner can prove certain forms of lawful status. *See id.* §§ 1252(e)(2)(A)–(C).

None of these jurisdiction-stripping provisions are applicable to Petitioners' FSA claim. Petitioners argue that they:

> [D]o not ask the Court to reweigh any credible-fear determination or to decide whether they are inadmissible or entitled to relief. They accept the Immigration Judge's determination as to Armenia exactly as it was made. Their claims are that (1) on that determination, no order "under" § 1225(b)(1) can lawfully exist, and the hybrid order Respondents now propose to execute was never authorized by statute; (2) removal to Costa Rica is not the execution of any order under § 1225(b)(1), but a separate transfer for which Respondents identify no statutory authority; and (3) Respondents' detention of Petitioners, including two young children, is unlawful. Those are questions of law about the existence and scope of Respondents' authority to restrain Petitioners, which lie at the core of habeas.

Pet. ¶ 10.

This Court agrees. Petitioner's FSA claim challenges the lawfulness of their custody, including their continued detention in a non-licensed, secure facility and the government's failure to release them to their father pursuant to the FSA. *See generally* Pet. ¶¶ 59-62. Because Petitioners' FSA claim challenges neither their removal proceedings nor their

purported order of removal, Respondents' application of Section 1252's jurisdiction-stripping provisions to it is without merit.

Respondents also allege that Petitioners' claims are "improper habeas claims" because they do not "automatically entitle them to release from detention." Return at 10–11. However, some of Petitioners' claims do entitle them to release, including the FSA claim. Pet. ¶¶ 59-62.

As Respondents note, the Ninth Circuit in *Pinson v. Carvajal* developed a test for whether a claim goes to "the core of habeas corpus" and is thus cognizable under the writ: "release is *legally required* irrespective of the relief requested." 69 F.4th 1059, 1072 (9th Cir. 2023) (emphasis in original). Petitioners claim that release is the proper remedy under the FSA, which "creates a presumption in favor of releasing minors" and "requires that minors be held only briefly in CBP facilities." Pet. ¶ 61. Petitioners argue in relevant part:

> Leo, age 11, and Luna, age 5, have been held in Border Patrol stations for nine days. Petitioners do not ask this Court to enforce the Agreement on behalf of the class; they cite the Agreement and the *Flores* court's findings as evidence that their continued confinement in a CBP station is neither reasonable nor necessary. Continued detention also serves no legitimate purpose. Petitioners have no criminal or immigration history, Ex. 1 at EOIR-44–45, 54; they have a fixed destination with Mr. Stephanyan in Los Angeles, *id*. at EOIR-7, 9; and the only removal Respondents contemplate is one the statute does not authorize. Detention that does not bear a reasonable relation to a lawful purpose violates due process. *See Zadvydas*, 533 U.S. at 690. The Court should order Petitioners' release under appropriate conditions or, at a minimum, order Respondents to make an individualized parole determination within a short time and to transfer the children out of CBP holding facilities.

Pet. ¶ 62.

*Pinson* clarified that release is the sole remedy for claims that challenge the validity or lawfulness of detention. 69 F.4th at 1070 ("Release is the only available remedy—and thus a claim is at the core of habeas—if a successful petition demonstrates that the *detention itself* is without legal authorization." (emphasis in original)). Petitioners allege that their continued detention in a non-licensed, secure facility is unlawful under the FSA. Pet. ¶ 61. Unlike in *Pinson*, Petitioners are not challenging the conditions of their confinement, but

rather its legal basis. Because "[h]abeas is at its core a remedy for unlawful executive detention" and "[t]he typical remedy for such detention is, of course, release," release would be appropriate should Petitioners establish that their continued detention is unlawful under the FSA. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004)).

Having found no bar to jurisdiction, this Court now turns to the lawfulness of Petitioners' present detention.

**B. Petitioners' continued detention in an unlicensed, secure facility is unlawful.**

The FSA set "nationwide standards for the 'detention, release, and treatment of minors,'" including accompanied minors. *Rosen*, 984 F.3d at 726 (citing FSA ¶ 9). It remains binding on the Department of Homeland Security. *Flores v. Sessions*, 862 F.3d 863, 879 (9th Cir. 2017). The Ninth Circuit provided a helpful overview of the FSA's requirements for the detention of minors:

> The Agreement imposes several substantive requirements on the government's detention of minors. It requires the government to "hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors" and to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs." Agreement ¶¶ 11, 12A. Ordinarily, within three days after apprehending and detaining a minor, the government must choose between two options for placing the minor. *Id.* ¶ 12A. The first option, discussed in paragraph 14, is releasing the minor to a parent, legal guardian, adult relative, or another "capable and willing" designated adult or entity. Release is mandatory if the minor presents neither a flight nor a safety risk and a qualified custodian is available. Alternatively, under paragraph 19, the minor may be placed in a facility "licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children." *Id.* ¶ 6. Licensed facilities must be "non-secure as required under state law." *Id.*

*Rosen*, 984 F.3d at 727–28. In short, Respondents had two options for the minor Petitioners' continued detention: transfer to a non-secure, licensed facility or release to a capable guardian.

Petitioners allege that they have been held in a CPB holding facility which is not suitable for minors—namely, the Imperial Beach Border Patrol Station—since October 17, 2026. Pet. ¶¶ 6, 7, 61. Petitioners further allege that the minors' father, who resides in Los Angeles, stands ready and able to accept the minors into his custody. *Id.* ¶ 62. Also, there is nothing in the record that supports that Petitioners are a flight risk or a safety risk. Respondents do not contest these allegations, nor do they provide any justification for their failure to release or otherwise transfer the minors to an FSA-compliant facility. *See generally* Return. On this record, the Court finds that Respondents' continued detention of Petitioners Leo Stepanyan and Luna Stepanyan in a CBP holding facility in Imperial Beach is unlawful. Accordingly, the Petition must be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** the following:

(1) Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioners Leo Stepanyan and Luna Stepanyan to their father, Sarkis Stepanyan, and to **FILE** a Notice of Compliance, no later than **12:00 p.m.** on **November 9, 2026**, confirming that they have been so released; and

(2) This Court recognizes that, because the FSA only applies to minors, Petitioner Araks Palyan's detention may not be found unlawful as an FSA violation. *See Y.A.A. v. LaRose*, No. 3:26-CV-03071-LEK-VET, 2026 WL 1881585, at *8 (S.D. Cal. June 30, 2026) ("Petitioner also cannot seek habeas relief pursuant to the *Flores* Settlement Agreement because he is no longer a minor."). However, the Court urges Respondents to consider humanitarian parole for Araks Palyan. This is both permitted under federal regulations and encouraged under agency standards. *See* 8 C.F.R. 212.5(b)(3)(ii) ("Minors may be released with an accompanying parent or legal guardian who is in detention."); Bureau of Customs and Border Protection, *National Standards on Transport, Escort, Detention,*

*and Search*, Dep't Homeland Sec. § 1.9 (Oct. 2015) ("CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation."). Respondents shall also **FILE** a status update as to Petitioner Araks Palyan no later than **<u>12:00 p.m.</u>** on **<u>November 9, 2026</u>.**

**IT IS SO ORDERED**.

Dated: November 6, 2026

Honorable Linda Lopez
United States District Judge